Tilghman C. J.;
This is a.hard demand on the part of the plaintiffs. The defendants have acted innocently and with good faith, and must be considerable losers, if they fail in their defence. This case seems to have been considered by the District Court, as turning on a question of defalcation; but I do not consider it as such. It is an equitable defence, so intimately connected with the plaintiff’s cause of action, as not to be separable from it. The plaintiffs stand in the place of Christian Hiestand, and have no o her rights than he had. So that, if it can be shown, that he could not have supported an action of this kind, neither can they. Christian Hiestand had a right to call for the interest of 1204 pounds, to be paid to him by the defendants, annually, during his life. But there was nothing to hinder the parties from coming to an agreement, by which Christian, instead of receiving the interest, annually, from the hands of the defendants. should receive something else of equal value. And this might be done, by a single operation, by which, Christian should be put in possession of property, which would insure him the payment of his annuity, during his life.. Now this is just what has been done. The plaintiffs put into the hands of Christian Hiestand, a principal, the interest of which is equal to the annuity, to which he was entitled, by his father’s will. It was the same, as if they had advanced to him, at once, all which he could claim from them, during his life. But a bond, with security, was taken from him, in order to preserve the principal for those, to whom it will *190 belong, after his death. Suppose Christian had not been discharged under the Insolvent Act; could he have called upon his trustees to pay him his annuity, while he had the principal in his own hands ? or could he have compelled them to bring suit, on the bond, against his own security, in order to recover the interest, and pay it to him? Most certainly he could not. What right then have his assignees to make demands of this kind ? They want the trustees, in the first place, to account to them for the yearly interest, and then to come in, as bond creditors, for a dividend, from the estate of Christian Hiestand, in their hands. But this is manifestly against equity; because the fund, out of which the interest is to arise, was delivered to him, before he assigned to the plaintiffs., What .right have the plaintiffs to say, that Christian might not make an arrangement of this kind, before he became insolvent ? The defendants had large dis’ retionary powers, as trustees, by the will of Jacob Hiestand; and it was necessary that they should have them. They might have paid him any part of the principal, they thought proper. But it seems, they judged it most prudent, to keep the principal entire. Whether they have acted discreetly, in trusting Christian with the principal; whether they have taken good security; and if not, whether they will be responsible to his representatives, after his death,— are questions not now before us. What we have to decide, is, whether the assignees of Christian, can undo an arrangement made by him, touching an affair in which he only was concerned, that is to say, the payment of interest, during his life. It is evident, it was never intended, that the defendants should be liable for Christian's annuity, while he retained the principal. It would be but receiving with one , hand, and paying with the other. If the plaintiffs, who stand in the place of Christian, will refund the principal, they will then have a right to call for the interest; but not until then. Neither have they a right to insist on the defendants’ bringing suit against Christian’s surety. That would he against equity; because, when the surety became bound, he knew that Christian was entitled to the interest, and therefore he was put to no hazard on that account. It was not in the power of Christian, by any assignment he could make, to introduce a third person, who should destroy the equitable re *191 lation which subsisted between him and his security. I consider the transaction between the defendants and Christian Hiestand, in the form of a loan, as amounting, in sub- . r - . . , , . r. ° . stance, to a satisfaction of Christian’s claim of interest, under his father’s will, as long as he retains the fund, out of which the interest is to arise ; and therefore his assignees cannot support an action for that interest. My opinion is, that the judgment should be re-versed, and a venire facias de novo awarded.
Gibson J.
Except as to the arrears due at the assignment, I think the matter of the defence could not be allowed as set off. An assignee can be affected by transactions between the original parties, only where the assignment was of a duty presently owing, although it may be payable in future ; and here it was nbt of a duty at all, but of an estate, in the produce of money at interest. This interest was not even the accessory of a debt owing to the assignor, and passing incidentally by an assignment of the principal: it was itself the principal. It was not a chose in action, but an incorporeal hereditament; and might, with some propriety, be called an equitable annuity. Now the arrears of an annuity, cannot have the character of a debt or duty, before they are due; for non constat, that they will ever become due, as the annuity may be terminated, in an instant, by the death of the annuitant; arid, during its existence, they are not, at law, properly a debt, or recoverable as such, even after they are actually due ; for the remedy is by writ of annuity, in which the judgment is to recover the annuity itself; and on this judgment, which is executory, the plaintiff has a scire facias to recover all arrears, whether due at the time of the impetration of the writ of annuity, or growing due afterwards. This plainly shews, that the nature of an incorporeal estate, like the present, is altogether different from that of a debt presently owing, but payable in future ; on a fancied resemblance to which, the argument in favour of the set-off turns. Between the debt offered to be set off, and th'e arrears which grew due after the assignment, there could be no mutuality; for those arrears did not then exist, nor was there any certainty that they ever would exist. To say, that the person, by whose hand the annuity is payable, may set off a debt of *192 the assignor, against an assignee claiming arrears that have grown due sjnce the assignment, is to say, that such person have a ben on the estate assigned, for all the debts the annuitant owed him. Could the grantor of a rent charge, set a debt due by the grantee, against arrears claimed by an assignee, which became due after the assignment ? To allow the set-off; would give the trustees a lien, and an unjust preference over the other creditors.
But it has been argued by counsel, that however this may be, the transaction furnishes an equitable defence. To be sure, as the action is in the place of a bill in equity for performance of a trust, whatever defence the trustees may have, must, in its nature, be equitable. It is not the least among the evils of our mixed system, that it breeds a confusion-of ideas, and consequent uncertainty, as to the rules of equity, and the nature and extent of the relief to be claimed, which would never occur, if the suit were viewed, as divested of the dress of an action at common law. Without keeping law and equity as distinct in the mind, as they are in practice, where they are administered separately by different tribunals, the principles of the latter can never be fixed or certain, For want of this, an equitable defence is often, with us, ati undefinable something, which depends on a confused feeling of equity, but which is referrible to no settled rule of a Court of chancery. Now suppose the case before us, to be depending before a chancellor: If the trustees could defend themselves, it would be on some particular equity, which they could lay their finger on ; and what that equity is, let us endeavour to discover.
An equity could arise, only by considering the transaction, as an appropriation of the principal, to the maintenance of Christian Heistand, ;he cestui que trust, pursuant to the directions of the will. But from the trustees having loaned the fund to him, and taken security for the repayment of it, with interest, it is evident, they did not consider it so themselves. By the directions of the will, they were to put the fund out at interest, and yearly to pay him the proceeds; “ but if the interest should not be sufficient for his maintenance,” they were “ to give him, of the principal, so much as they should think proper.” This surely does not authorise them to apply the whole at once, unless that were abso» *193 lately necessary ; but only as much as they should judge proper, to supply the deficiency on the interest falling short. Nor were they, in this, to exercise an arbitrary discretion ; for clearly, they might be called to an account, how they had discharged their trust; and the Court would necessarily have a supervising power to judge whether they had exercised a sound discretion. Here, no reason for an application of the principal, either in whole or in part, is disclosed. But it is unnecessary to speak of the extent of their power to apply the principal: they never intended to apply it. It is impossible not to see, that the true state of the case is just this: Two trustees, to whom .a father devised a fund, for the maintenance of his son, with an express direction, that the son should not have the possession or management of it, nevertheless, undertake to place it at the son’s disposal, by the contrivance of a loan ; and these trustees call'on a Court of chancery to sanction the arrangement, although it was nothing else, than a circuitous, but undisguised, attempt to defeat the object of the trust. Now, on the face of the bond, the transaction appears to have been a loan unconnected with the subject of the trust; and, as such, it would operate in this suit, if at all, only as a set-off,. which I think I have shewn to be out of the question. To make it a direct defence to this suit, it is necessary, there should have been an express or implied agreement, that the interest on the bond should not be collected, but be retained, in satisfaction of the interest arising from the fund supposed still to be in the hands of the trustees. If there was, in fact, no such agreement, there is an end of the matter : the Court will not make a contract for the parties, but leave the trustees to their remedy at law, on the bond. But suppose there was such an agreement, — and, I admit, it might fairly be inferred from the nature of the transaction, — does it not amount to this, and no more: the fund is, by a fiction of law, and for the purpose of a colourable performance of the trust, to be considered as in the hands, and subject to the control of the trustees ; but it is, in truth- and in fact, to be subject to the m oagement and control of the cestuy qui trust, and to be exclusively at his risk, as far as his interest is involved. Is not this the character imputed to the transaction by the defendants themselves? For if this Court sanctions the *194 arrangement, it must be by putting the matter exactly on t|lat footing. 'I he insolvency of the cestuy qm trust, shortly after he. bad.-got possession of the fund, shews the object of . . ‘ ... , . . . the testator, (if indeed any thing be necessary to shew it; m directing that he should not have the management of it. What fight then had the trustees to abandon their trust, and put the fund into the hands of a person notoriously incapable of managing it to advantage, or, what is the same thing, supposed to be so, by the person who created the trust? If they had done it directly and openly, no one will pretend, that a chancellor would not hold them answerable: I cannot therefore see that they ought to be discharged, because they have done it under cover of a veil, which is too flimsy not to be seen through at a glance.
It is' unnecessary to inquire, whether the assent of the cestuy qui trust to the arrangement, would' be as binding on his assignees, as himself ; or whether they stand in superior equity, as claiming, not through his agreement, but, paramount to it, through the creation of the trust; for, I think it clear, the cestuy qui trust himself, would be let in to impeach the transaction. The contemplated arrangement was in fraud of the trust, and therefore 'illegal; and its illegality could be taken advantage, of,- as far as the transaction remained executory, even by a particeps criminis. I express no opinion, how far its illegality might avail the surety, in an action on the bond. If he could not defend himself on that ground, so much the worse for him; but the apparent hardship of drawing money from his pocket, to put it, in effect, into that of the person for whom he became security, ought to be of no consideration here or elsewhere ; he entered into the engagement with his eyes open, and clearly he has no equity. In giving effect to rules founded on public policy, particular hardships, even to persons unquestionably innocent, are to be disregarded. All I say at present, is, that when we are directly called on to consummate the illegal agreement, by defeating the object of the trust, a party to it, or a person in his stead, will be permitted to resist; and that We ought to leave the defendants to their remedy on the bond. But the cestuy qui trust stood in a relation, that would enable him to impeach such an agreement, even after it was executed; and. this, on the ground of its being a fraud *195 oft himself, as well as on the person who created the trust. It is said by Lord Mansfield, in Clark v. Shee, Cowp. 197, that where a contract is unlawful, by reason of a prohibition, , . ,. , . which has tor its object, the protection ot weak or necessitons men, the rule, in pari delicto, does not hold, because, where the defendant imposes on the plaintiff, it cannot be said to be the fault ot the latter. Then, if the cestuy qui trust might set up the illegality of the transaction, there is no doubt but that the plaintiffs may.
It might be questioned, whether the beneficial interest under the trust, was of such a nature, as would enable the cestuy qui trust to convey it; and if it were not, the plaintiffs Would fail altogether. ' It was at most, a contingency, or thing in action, which is not assignable at the common law ; and although it is assignable in equity, it is on the ground, that the assignment amounts to an agreement, that the assignee shall receive the money to his own use, which will be carried into specific execution. But although a cestuy qui trust may, in general, bind his interest, by an agreement to which his trustees are not parties, yet such agreement may be liable to all the objections that can be made to any other contract, as grounds of resistance against specific performance. Here the declared object of the trust, was a provision for Christian Hiestand’s maintainance, by securing to him an allowance payable at stated periods; and to suffer him to sell or otherwise dispose of it, would frustrate the intention of the testator, and lose the benefit to be derived from the intervention of trustees. I know not, why he might not as well assign the fund itself; for the principal was to be applied to his maintenance, on the interest falling short. It may therefore be doubted, whether such a contract would be carried into effect by a chancellor; and I know not that the Insolvent Acts were intended to operate on interests that were not grantable before, or subject to the payment of debts. I confess, I recollect no case that furnishes a decision exactly in. point, as I have not examined the matter, with a view to this particular question. Equity will not execute an assignment by an officer of his half-pay ; that being a provision by the State, as a decent maintenance for him, as well as a reward for past services, and to enable him to preserve a situation, that will always render him *196 ready to return to actual service ; but this is founded on public policy, in securing the object of the State, in making the grant, without admitting the same principle of de~ ... , . r , cisión, in cases merely or a private nature, (bee the cases on tbis' subject, collected in Stone v. Lidderdale, 2 Anstr. 533.) However, in these, and.similar cases, the legal estate was in the assignor ; but, in the case of a trust like this, where the party beneficially interested, is necessarily to be considered as, in some measure, in a state of pupillage, chancery would not, I apprehend, execute an agreement, whose object would be destructive of that of the trust. To me, the case seems to fall within the principle of those cases, that are deemed fraudulent, as being an imposition on others not parties to the fraudulent agreement: as an agreement, in fraud of a composition by creditors, &c. The matter has not, however, been drawn into controversy; and on the points argued, I am of opinion, that the judgment ought to be affirmed.
Duncan J.
Jacob Hiestand, the testator, made the following provision for his son Christian : “ Item, it is my will, and I ■ order, that my son Christian his hereafter bequeáthed fifth partj not shall have in possession ; but my hereinafter named trustees, shall put the said fifth part at interest, and the interest shall be paid to my son, yearly, and every year, during his natural iife. But if the interest shall not be sufficient for his maintenance, then the trustees shall have a right to give him, of the principal sum, so much as they shall think proper ; and if any remains, after his decease, it shall be divided among his heirs.” The interest was paid to Christian, in full, up to August, 1816. On the 24th of January, 1817, Christian obtained the benefit of the Insolvent Act, and assigned the interest to trustees, the defendants in error. The trustees under the will, put the principal into the hands of Christian, on the 1st of April, 1815, taking his bond, payable in one year, with Henry Beer as surety. This bond, both principal and interest, remains unpaid. This action was brought for the interest, accruing after the assignment of Christian, against the trustees, who put in all this matter, as a defence, under the pleas »f non assumpsit and payment, with leave, &c,, either as a *197 legal set-off, or equitable defence. The party in interest, is Beer, the surety ; for if the assignees of Christian can recover, they, in fact, recover from his bail. So that the question is, whether the bail shall pay the principal; for the insolvent debtor and his assignees are the same ; and we must look to the consequences of a recovery, on all sides. And here the unavoidable and most extraordinary consequence would be, to make Beer, the bail, pay to Heistand,, the principal debtor, the interest on the bond, because he is not able to pay it, and because he is insolvent. This interest is to form a part of his estate, and go to pay his other debts.
I propose to consider this defence, under three heads : 1. Is the bond a legal set-off; the whole principal and interest being due at the time of assignment ? 2. Is it payment and satisfaction, or extinguishment at law ? 3. Do the parties stand in that relation to each other, that, on the facts appearing on a bill and answer, a chancellor would decree payment of the interest. I do not mean to touch the question, whether, on the death of Christian, the principal being trusted to him, there remains any thing to be divided among the heirs. The Defalcation Act provides, that if two or more, dealing together, be indebted to each other, upon bonds, bills, promises, accounts, or the like, and one of them commence an fiction against the other, if the defendant cannot gainsay it, it shall be lawful for him to plead payment of part, or all, of the sum demanded, and give any bond, bill, receipt, or bargain, in evidence ; and if it appear, that the defendant hath fully paid and satisfied the debt or sum demanded, the judgment is to be for the defendant; if part of the sum, it is to be defalked ; if the plaintiff is overpaid, the jury is to certify such overpayment. The Act of 18X4, for the relief of insolvent debtors, enacts, “ that the trustee, or trustees, shall have the power to compound with his debtors ; and all such debtors shall have the benefit of a defalcation, where there shall be mutual debts between them, in like manner, as in other cases.” The debt to be set off, must not be a contingent debt, at the time of assignment. The debt on this bond was not contingent. There never could exist a demand of Christian, under his father’s will, that could not have been met and answered by this bond. They were indissolubly united together. The set- *198 off between the assignees and the debtor of the insolvent is provided for j and the only question is, are these debts mutual ? This provision is similar to that in Acts of Bank* ..... . . . r , ruptcy. 1 he objection is, that this is not a case ot mutual debts, at the time of assignment. The debt claimed by the assignees, was not due; though the bond was due. It would be most inequitable, to oblige a creditor to come in for a dividend on his debt, which was due, and receive twenty cents in the pound ; and yet oblige him to pay a debt, in full, which was not payable until the day after the assignment. Such has not been the construction, either under our insolvent laws, or under the Acts of Bankruptcy. Ex parte Prescot, 1 Atk. 230. But the objection is more formidable, that this was a contingent debt, and that it is impossible to strike a balance, because it is uncertain whether any thing will ever become due. Annuities are not provided for in the bankrupt laws, nor are they in the Insolvent Acts. This is considered as a great hardship, both on the bankrupt and annuitant; — hard on the debtor, after he has given up all to his creditors, to remain answerable for debts which he has nothing to satisfy, — and harder on the creditor, to be excluded from a dividend, and left to a fruitless remedy, against a bankrupt. It is a great defect and chasm ; but so it is. Cooke’s Bankrupt Law, 146. But the Court lay hold of a legal subtlety : as, if there be a bond to secure the payment of annuities, and it is forfeited at law, you may have a value set on the annuity, and come in, as a creditor, under the commission ; otherwise the annuitant, for growing annuities, cannot come in. The case is totally different, if the assignees are obliged to come into equity, to compel the performance of a trust; for then, as they require equity, they shall do equity. Holland v. Calliford, 2 Vern. 662. Cooke’s Bankrupt Law, 139. The equity here would be, to ascertain the value of the annuity, according to well settled rules for such adjustments, and strike the balance. Our Defalcation Act, which is more comprehensive than the British, has been extended by. a very liberal construction, which has taken in every equity. Steigleman v. Jeffries, 1 Serg. & Rawle, 477. But another reason why this ought to be done, and why it would be done in bankruptcy, is, that though the debts are not strictly mutual, yet *199 there are mutual credits. The money was loaned, put out at interest, to the man who was to receive the interest; for the surety cannot be in a worse state than his principal. The credit was given, on the consideration of the interest being- p-rvable to Christian Hiestand, and therefore within the equity of the provision, as to mutual debts. Ex parte Prescot. 1 Atk. 230.
It must never be lost sight of, that this action of the assignees, is to compel the execution of a trust; that if there were a Court of Chancery here, the remedy must be in that Court; and that in this Court, if the action of assumpsit is substituted for a bill in equity, it must be decided on equitable principies. On the plea of non assumpsit, the inclination of my mind is, that this would be a full defence. On the ground of set-off, my respect for the opinion of the learned Judges from whom 1 differ in the general result, has occasioned a hesitation. But I have taken other views of this subject, on which my judgment rests with greater satisfaction. That the assignees ought not to receive; that they are in no better state than the insolvent debtor, is too plain a position, to .admit of argument. They are, in fact, the insolvent debtor.
2. Does the defence set up, amount to payment, satisfaction, or extinguishment ?
If the trustees had brought their action on this bond, against Hiestand a.'d Beer, or against Beer alone, I beg to know, whether they could recover the interest ? The principal debt we are not now considering. It would be a very satisfactory answer, for him to say, “ I am surety in this bond for Hiestand; the interest is his. Why recover from me, to pay over to him ?” . If he remained solvent, this could not be done. His insolvency does not alter the state of the surety ; it may mend it, but it cannot make it worse. The surety could say with justice, “This bond is a fund for the payment of interest. It is trust money, loaned out, under the direction of the will, for specific purposes : one of these is, to pay the interest to Christian. You cannot recover from me, to pay to him.” It is a well settled principle in equity, that where the obligee has a fund of the principal in his hands, an available one, he must resort to that, and exhaust it, before he can have recourse to the surety. This I had occasion fully *200 to consider, in the opinion I delivered at the last session o£ this Court, in Griffith v. Chew, in Philadelphia.* The assignees have no foot to stand upon,-unless the trustees could recover on this bond ; because the trustees are not responsikle their own persons, unless they have committed a breach of trust. Plere they could have given the whole principal to Christian. They lend it to him, taking security; for the evidence is, that it is the very trust money, lent to Carry into execution, the trust. Christian Hiestand was not liable for thé interest; his bail cannot be.
Retainer is payment. An executor may, on plene administravit, give in evidence, a retainer of his own debt. Why is this ? Because retainer is satisfaction and payment. So. where there are two joint and several obligors, and the obligee makes one of them his exe.cutoi, it is a discharge of both : and if one of them dies, leaving assets, and the obligee makes his administrator, the executor of his own.last will, the debt is extinguished, as to both; and for this reason, that the same hand was to receive and pay. Wankfield v. Wankfield, 1. Salk. 305. Griffith v. Chew. And here, the yerv man who asks to receive this money, is the one who has received it, and who ought to have received it ; the principal who was bound to pay, and, at the same time, entitled to receive; the creditor and the" debtor. The.trustee's would have acted dishonestly by the bail, had they 'paid the interest, because they could retain it, to discharge the interest on this bond; and being their duty to retain it, payment to the principal would have discharged the surety.
Besides, in what state is Christian left? He is obliged to assign the interest, to be recovered annually by his assignees, and yet he’ remains liable to the trustees, for the very same interest. Hia claim for interest under the will, is absorbed in his bond-for'the principal debt. His right to the interest is extinguished-or. suspended until he restores that which gives the interest, There.seem to me very strong reasons, both in law and equity, for this extinction and suspension; and I confess, I am not able to see .any assignable interest he had ; or how the.insolvent debtor had any thing in this fund,-he could assign. If he never could have recovered the *201 interest from the trustees, his assignees cannot. The question is not one of set-off ; but of property, of right to the thing demanded. If the action were in assumpsit, on non assumpsit they could have given this in evidence, and defeated the plaintiffs : If account render, which would appear to me to be the proper action, on fully accounted; for they have fully accounted for the interest, where they show the very matter, for the profits of which they are called to account, is in the hands of the cestuy qui trust: If in debt, on the plea of payment; for having in his hands the principal, he has in his hands the interest.. At an early day, and long before the Statutes of Set-off, a principle prevailed, under the name of recouper; and under this doctrine, the Courts of common law -held, that if a man granted a rent-charge of ten pounds out of his land, and the grantee disseised the grantor of this.land, and he brought assize, and. recovered to the damage of ten pounds, above the ten pounds which the defendant ought to have during the time of disseisin, for the rent, that the ten pounds of the rent, should be recompensed in damages, and the plaintiff should not recover the whole twenty pounds in damages; becáu'se, during that time, if no disseisin had been, the defendant ought to have had the ten pounds in rent, and it is circuity of action, that the plaintiff shall recover twenty pounds, and the defendant ten pounds again. 8 Vin. 556. Br. Damages, pl, 7. Fitzh. Damages, 18. And in Coulter’s Case, 5 Rep. 30, the reason of this is stated. It is because when the disseisee re-enters, the arrearages would be revived. This circuity of action is to be avc/ided ; and boni judiéis est lites dirimere, ne lis ex lite oriatur. The charge here may be compared to a charge on land. The principle is the same. The principal is considered as the land ; the interest as the-rent; both, as a return for thé enjoyment of the thing. But the reasoning .and the judgment of the Master of the Rolls in Jeffs v. Wood, 2 P. Wms. 129, is so applicable and conclusive, that I will give it in its own language It is true, stoppage is no' payment at law, nor is it, of itself, á payment in equity, but then a very slender agreement for discounting or. allowing the one debt out of the other, will make it a payment, because this prevents circuity of action -and multiplicity of suits, which is not favoured in law, much less in equity. But it may be *202 a doubt, whether an insolvent person may in equity recover aga¡ns{; h¡s debtor, to whom he, at the same time, owes a greater sum; though I own, it is against conscience that A. should be demanding a debt against B. to whom he is indebted in a larger sum, and would avoid paying it. However, it seems that the least evidence of an agreement for a stoppage will do ; and in these cases equity will take hold of a very slight thing to do both parties right. And it is still more reasonable, that where the matter of the mutual demand is concerning the same thing, there the Court should interpose, and make the balance only payable. Now in the principal case, the defendant’s the legatee’s demand is in respect of the testator’s assets, without which the executor is not liable ; and it is very just and equitable for the executor to say, that the defendant, the legatee, has so much of-the assets already in his own hands, and consequently is satisfied pro tanto. So that if the legatee himself had brought the bill for his legacy, it had been very proper for the executor to have insisted, that the legatee, owing so much to the testator, and having already so' much in his hands of the testator’s assets, was consequently paid so far. In the present case, the assignees of the commission of bankruptcy against the defendant, Wood, bring their bill for the legacy, and standing in the place of the legatee, can be in no better case ; and therefore, as the legatee, had he brought his bill for the legacy, might have been told by the executor, that having so much of the assets in his hands, he was consequently paid so much of his legacy, surely the same thing may now be insisted upon against the assignees, who stand in the place of and represent the legatee. And an equitable demand is a debt within the Statutes of Bankrupts.”
But whatever scruples I might have on the first two grounds of defence, on the third I have none. In Courts of equity, where they find a demand on the one side and the other, they endeavour to set them off. This Court has not halted in this respect. Great liberality has been shown, in allowing every thing which bore the aspect of a cross demand. But this defence is not so much in the nature of a cross demand, as one arising out of the same transaction ; an equity so strong, that our Courts of common law would direct a jury, on the plea of payment with leave, &c. to presume a *203 payment, on the principles which govern them in all cases of equitable defence, of presumption that all has been paid, which, in good conscience, ought not to be demanded. The . , , , bond and the interest are one transaction. I he interest rises out of the bond. The bond is the very fund from which the interest is to arise ; — the tree on which the fruit grows, and which Christian has cut down. I cannot understand how Christian Hiestand can be said not to have received the interest on the principal debt, when he has the principal itself. The principal with its ear mark, is found in his hands, appropriated to a particular purpose, the discharge of the interest. It is the intention of all bankrupt laws and all insolvent laws, to limit all their creditors. As to the estates of such debtors, the assignees take them, subject to all equities. Whatever belongs to the insolvent is liable in equal proportions. But if the subject matter is not the insolvent’s, both in law and equity, and especially in equity, it is not considered in the distribution of his estate; but the person who has a legal interest in any thing, or a chose in action which is an equitable interest, shall be entitled to it; and the assignees, in these cases, must stand exactly in the situation of the bankrupt himself, or otherwise commissions of bankruptcy would be an intolerable grievance. Ex parte Dumas, 1 Atk. 232. 2 Ves. 282. One man’s property, whether chattel in possession or chose in action, shall not be dissipated, to pay anothei’s debt. The assignees take, subject to all equity to which the property was liable in the hands of the bankrupt. So in the assignment of all chases in action, the assignee, except in cases of negociable paper, takes it, subject to all the equity existing, at the time of assignment, between the then parties. Bank of Niagara v. M'Cracken, 18 Johns. 495. What is the equity here ? Trustees are empowered to put the fund out at interest, and pay the interest to Christian Hiestand, during life. They have power to give him the whole principal. They loan it to himself, taking security for re-payment. The dispute is between the cestuy qui trust and the trustees. This process is against the fund ; and while cestuy qui trust holds the very fund, he demands the profits of it from his trustees. Interest is a compensation for the use of money, as rent is for the use of land. If this had been land, which the trustees were directed to *204 lease, and pay the rents to Christian Hiestand, and the trustees had suffered him to enjoy the, land, he could not ask them for the profits; Using the money is enjoying the in- „ r .u - . „ - „ T terest. He consumes the interest m its very use. “ Instead of paying me the interest, let me have the principal,” was his request. “The interest you know is my own; I will. give you security to repay the- principal.” The trustees come into this arrangement-; and by it, the interest-is paid him in advance, until he repays the principal. The trustees held the pledge, the security, for the interest, in their own hands. The assignees take the interest just as Christian Hiestand was entitled. He had an equity of redemption ; they have the same equity. By restoring the principal, the right to interest is restored. But the trustees are not divested of the pledge,-the security, by his assignment. The bail has-a right to Say to them, “ Retain! stop ! You have the right so to do. If you relinquish it, I am discharged.” And discharged he would bé. Examine the whole transaction, the evidentia rei; would any jury hesitate in'drawing a conclusiqn from the whole circumstauces, — the intrinsic' evidence, that the interest was paid in advance ; that, in the nafure of things, an agreement must be implied, that so long as he held the principal, he was'.n6t to claim interest? Not in words, but a tacit stipulation. This would be the .conclusion in point of fact: I' think it is- the legal conclusion. I am satisfied that this would be the conclusion in a Court of equity. It does not lie with Christian Hiestand, or those representing Christian Hiestand, to criminate the trustees’; to accuse them oí improperly trusting him with' the! principal: their lips are sealed. It may hereafter be a question between the heirs of Christian Hiestarid and the trustees, and between the trustees and Be,er, and a very serious, question it will be ; whether; having power to give him the whole principal, the letting him have it on bond, is not the exercise of that discretion, an execution of-the trust-; He can never say, “ You improperly let me have the principal; therefore you must pay me the interest.” Whether, in case of the insolvency of Beer, they would be personally liable, or might not say, “ We gave it to- him for Ms maintenance; .there is nothing remaining for his heirs ;” the parties -not being before the Court, it, *205 is unnecessary to consider, and would be improper to express, an opinion.
Whatever was the equity between Christian Hiestand and the plaintiffs in error at the time of assignment, the defendants, his assignees, take subject to that: and to me it appears clear, that, at the time of the assignment, there was an existing equity, running with and accompanying this trust; that the interest was not to be demanded by Christian Hiestand, until he restored the principal. I am therefore of opinion that judgment be reversed.
Judgment reversed, and a venire facias de novo awarded.

 Ante, page 17.